**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 1:25-cv-23838-KMM

EDITH JASMINA VALVERDE HERRERA,

      Plaintiff,

v.

CARNIVAL CORPORATION,

      Defendant.

_____/

## ORDER

THIS CAUSE came before the Court upon Defendant Carnival Corporation's ("Defendant") Motion to Compel Arbitration and to Stay (the "Arbitration Motion" or "Arb. Mot.") (ECF No. 5) and Plaintiff Edith Jasmina Valverde Herrera's ("Plaintiff") Motion to Remand for Lack of Subject Matter Jurisdiction (the "Remand Motion" or "Remand Mot.") (ECF No. 31) (together, the "Motions"). Filed in connection with the Arbitration Motion were Plaintiff's Opposition to the Arbitration Motion (the "Arbitration Response" or "Arb. Resp.") (ECF No. 9), Defendant's Reply (the "Arbitration Reply" or "Arb. Reply") (ECF No. 19), and Plaintiff's Notice of Supplemental Authority (ECF No. 38). Filed in connection with the Remand Motion were Defendant's Response (the "Remand Response" or "Remand Resp.") (ECF No. 34) and Plaintiff's Reply (the "Remand Reply") (ECF No. 39). The Motions are now ripe for review. As set forth below, the Court GRANTS the Arbitration Motion and DENIES the Remand Motion.

## I.    BACKGROUND

This case arises from injuries Plaintiff, a Nicaraguan citizen, allegedly sustained while working as a housekeeping attendant aboard Defendant's vessel, the Carnival Horizon. *See*

Complaint and Demand for Jury Trial (the "Complaint" or "Compl.") (ECF No. 1-2) ¶ 8. According to the Complaint, on or about April 12, 2024, Plaintiff "suffered severe injuries to her lower back while performing luggage duty." *See id.* On February 19, 2025, Plaintiff alleges that she was diagnosed with "lumbar discopathy of L4-L5 and L5-S1 disc herniation with severe spinal stenosis and facet synovitis," and was advised to undergo spinal surgery. *See id.* ¶¶ 28–29. Plaintiff further alleges that she "continues to suffer from lower back pain, neck pain, headaches, and requires lower back surgery and further medical care and treatment," and "is entitled to receive maintenance and medical cure from Defendant in a timely and complete manner." *Id.* ¶¶ 32, 35.

On April 7, 2024, the Parties had executed an employment agreement (the "Agreement") that contains the following arbitration provision:

> Except for a wage dispute governed by [Defendant's] Wage Grievance Policy and Procedure, any and all disputes, arising out of or in connection with this Agreement or Seafarer's service on the vessel, no matter how described, pleaded, or styled including but not limited to constitutional, statutory, common law, admiralty, personal injury, intentional tort, contract, equitable claims, claims of injury, medical and lodging benefits claims, inadequacy or improper care claims, or employment disputes, whether accruing prior to, during or after the execution of this Agreement, shall be resolved by final and binding arbitration on an individual basis. In addition, Seafarer agrees to arbitrate on an individual basis any and all disputes regarding the existence, validity, termination or enforceability of any term or provision in this Agreement, including but not limited to this provision to arbitrate. All Arbitration between the parties shall be referred to and finally administered and resolved by National Arbitration and Mediation . . . . The seat of the arbitration and the final hearing shall be either in Panama City, Panama or Manila, Philippines whichever is closer to Seafarer's home country.

(ECF No. 1-1) at 2, 7.[1] On April 11, 2025, Plaintiff initiated arbitration before National Arbitration and Mediation ("NAM"), but advised NAM and Defendant that she was unable to afford her $1,500.00 one-half share of the initial arbitration filing fee as required by the Agreement. *See* (ECF No. 5-2); (ECF No. 1-1) at 7; *see also* (ECF Nos. 9-3, 9-4). Plaintiff requested that

---

[1] The Court uses the CM/ECF pagination, which appears in the headers of all filings, throughout this Order.

Defendant pay the filing fee in full and asked NAM to direct Defendant to do so.  *See generally* (ECF Nos. 9-3, 9-4).  On April 15, 2025, NAM inquired as to whether Defendant was willing to pay the full filing fee.  *See generally* (ECF No. 9-5).  Defendant declined to pay Plaintiff's share of the fee, and NAM subsequently closed the arbitration for failure to pay the requisite filing fee.  *See* Arb. Mot. at 3; *see also* Arb. Resp. at 2, 6.

On April 11, 2025, Plaintiff filed the Complaint in the Eleventh Judicial Circuit in and for Miami-Dade County, Florida, asserting:  Count I for Jones Act negligence; Count II for unseaworthiness; Count III for failure to provide maintenance and cure; and Count IV for failure to provide prompt, proper, and adequate medical treatment.  *See* Compl. ¶¶ 43–74.  On August 26, 2025, Defendant removed the action to this Court pursuant to 9 U.S.C. § 205.  *See generally* (ECF No. 1).  Now before the Court is the Arbitration Motion, which seeks to compel arbitration and stay proceedings.  *See generally* Arb. Mot.  Also before the Court is the Remand Motion, which seeks to remand this matter for lack of subject matter jurisdiction.  *See generally* Remand Mot.

## II.    LEGAL STANDARD

In 1970, the United States acceded to the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "Convention"), which was subsequently implemented through Chapter 2 of the Federal Arbitration Act (the "FAA").  *See Lindo v. NCL (Bah.), Ltd.*, 652 F.3d 1257, 1262 (11th Cir. 2011).  The Convention "requires courts of signatory nations to give effect to private arbitration agreements and to enforce arbitral awards made in signatory nations," and "generally establishes a strong presumption in favor of arbitration of international commercial disputes."  *See Sierra v. Cruise Ships Catering & Servs. Int'l, N.V.*, 631 F. App'x 714, 715–16 (11th Cir. 2015) (per curiam) (citation omitted); *see also Trifonov v. MSC Mediterranean Shipping Co. SA*, 590 F. App'x 842, 843 (11th Cir. 2014) (per curiam) (citation

3

omitted).  Consistent with these principles, the FAA "establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *See Doe v. Princess Cruise Lines, Ltd.*, 657 F.3d 1204, 1213–14 (11th Cir. 2011) (citation omitted).

When adjudicating a motion to compel arbitration under the Convention, a district court conducts "a very limited inquiry." *See Bautista v. Star Cruises*, 396 F.3d 1289, 1294 (11th Cir. 2005) (citations omitted).  A court must order arbitration "so long as (1) the four jurisdictional prerequisites are met and (2) no available affirmative defense under the Convention applies." *See Suazo v. NCL (Bah.), Ltd.*, 822 F.3d 543, 546 (11th Cir. 2016) (citations omitted).  Specifically, the jurisdictional prerequisites require that:  "(1) there is an agreement in writing within the meaning of the Convention; (2) the agreement provides for arbitration in the territory of a signatory of the Convention; (3) the agreement arises out of a legal relationship, whether contractual or not, which is considered commercial; and (4) a party to the agreement is not an American citizen, or that the commercial relationship has some reasonable relation with one or more foreign states." *See Bautista*, 396 F.3d at 1294 n.7.  The available affirmative defenses to the enforcement of arbitration "are contained in Article II of the [C]onvention, and bar arbitration where the agreement 'is null and void, inoperative, or incapable of being performed.'" *See Pysarenko v. Carnival Corp.*, No. 14-20010-CIV, 2014 WL 1745048, at *2 (S.D. Fla. Apr. 30, 2014) (citation omitted), *aff'd*, 581 F. App'x 844 (11th Cir. 2014).

## III.  DISCUSSION

In the Arbitration Motion, Defendant seeks to compel arbitration on the gateway issue of arbitrability and requests that the Court stay this matter pending arbitration.  *See generally* Arb. Mot.  In the Arbitration Response, Plaintiff contends that compelling arbitration would be improper because:  (1) the Agreement's delegation clause (the "Delegation Clause") is incapable

4

of being performed under the effective vindication doctrine; (2) the arbitration "has been had" within the meaning of 9 U.S.C. § 3; (3) Defendant waived its right to arbitrate; (4) arbitration clauses in seamen's employment contracts are null and void; and (5) 28 U.S.C. § 1916 excuses seamen from paying filing fees. *See generally* Arb. Resp.

In the Remand Motion, Plaintiff argues that Defendant's asserted basis for federal jurisdiction, 9 U.S.C. § 205, does not apply to unenforceable arbitration agreements, and that Plaintiff has demonstrated the arbitration provision's lack of enforceability in her Arbitration Response. *See generally* Remand Mot. In the Remand Response, Defendant contends that the Remand Motion is moot because it has now "paid the full amount of the initial arbitration filing fee [and] arbitration has commenced." *See* Remand Resp. at 1. Plaintiff disagrees, arguing that the dispute is not moot as Defendant has filed an arbitral counterclaim requesting that the arbitrator "require [Plaintiff] to pay her one-half portion of the initial NAM filing fee prior to the arbitration proceeding on her substantive claim." *See* (ECF No. 39-1) at 7–8; *see also* Remand Reply at 2–3. The Court addresses these arguments in turn.

### A. Arbitration Motion

#### i. Jurisdictional Prerequisites

As the Court may only compel arbitration under the Convention if the jurisdictional prerequisites are satisfied, it first addresses those requirements before turning to Plaintiff's asserted defenses. *See Suazo*, 822 F.3d at 546 (citations omitted). Here, the Court finds that the four jurisdictional prerequisites are met as: (1) the arbitration provision is contained in the Parties' written Agreement; (2) the Agreement provides for arbitration in Panama or the Philippines, both of which are signatories to the Convention; (3) the Agreement arises out of a commercial employer-employee legal relationship; and (4) Plaintiff is a Nicaraguan citizen. *See Bautista*, 396

5

F.3d at 1294 n.7; *Taylor v. Carnival Corp.*, No. 25-CV-20851, 2025 WL 2720238, at *5 (S.D. Fla. Aug. 5, 2025) (finding the four jurisdictional prerequisites satisfied under similar facts (citation omitted)), *report and recommendation adopted*, 2025 WL 2937096 (S.D. Fla. Oct. 16, 2025); *see also* Omnibus Order at 12, *Wilson v. Carnival Corp.*, No. 1:24-cv-24894-KMW (S.D. Fla. July 24, 2025) (ECF No. 37) (same).   Because the Convention's jurisdictional prerequisites are satisfied, the Court next considers Plaintiff's asserted affirmative defenses, beginning with her challenge to the Delegation Clause.  *See Suazo*, 822 F.3d at 546 (citations omitted).

### ii.   The Delegation Clause

In the Arbitration Motion, Defendant contends that the question of arbitrability should be decided by an arbitrator pursuant to the Delegation Clause.  *See generally* Arb. Mot.  In the Arbitration Response, Plaintiff argues that she cannot access an arbitrator to resolve threshold arbitrability issues because she cannot afford the initial filing fee, and the Delegation Clause is therefore incapable of being performed under the effective vindication doctrine.  *See* Arb. Resp. at 9–14.

A delegation provision "is an agreement to arbitrate threshold issues concerning the arbitration agreement" such as "whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy."  *See Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010) (citations omitted).  When an arbitration agreement contains a delegation provision, a court "only retain[s] jurisdiction to review a challenge to that specific provision."  *See Jones v. Waffle House, Inc.*, 866 F.3d 1257, 1264 (11th Cir. 2017) (citation omitted); *see also Attix v. Carrington Mortg. Servs., LLC*, 35 F.4th 1284, 1303 (11th Cir. 2022) ("[A] court must always consider a validity or enforceability challenge that is 'specific' to the delegation agreement before enforcing it." (citation omitted)).  Challenges to a delegation provision are "a matter of substance,

not form," and "[a] party specifically challenges the validity or enforceability of a delegation agreement if, and only if, the substantive nature of the party's challenge meaningfully goes to the parties' precise agreement to delegate threshold arbitrability issues." *See Attix*, 35 F.4th at 1304 (citations omitted).

If a court determines that a delegation provision is invalid or unenforceable, it may then "review the enforceability of the arbitration agreement as a whole." *See Jones*, 866 F.3d at 1264 (citation omitted). However, "if the court finds that the challenge to the validity or enforceability of the delegation agreement lacks merit . . . the court must enforce the delegation agreement and send any challenges to the validity or enforceability of the primary arbitration agreement to the arbitrator." *See Attix*, 35 F.4th at 1304 (citation omitted).

Here, the Delegation Clause provides that Plaintiff "agrees to arbitrate on an individual basis any and all disputes regarding the existence, validity, termination or enforceability of any term or provision in [the] Agreement, including but not limited to this provision to arbitrate." *See* (ECF No. 1-1) at 7. As discussed above, Plaintiff contends that the Delegation Clause is incapable of being performed under the effective vindication doctrine because she cannot afford her share of the initial filing fee required to commence arbitration. *See* Arb. Resp. at 10. Because Plaintiff challenges her ability to access the arbitral forum in the first instance, she is in substance disputing the validity and enforceability of the Delegation Clause. *See Taylor*, 2025 WL 2720238, at *5 ("Plaintiff's argument that NAM's refusal to commence the arbitration until she has paid her half of the filing fee despite her inability to do so is a challenge to the [d]elegation [c]lause in that it contends that the existence of an arbitral forum is illusory; that is, she cannot get her foot in the door to litigate gateway issues, much less the merits of her claims." (citation omitted)); *see also* Omnibus Order at 11, *Wilson*, No. 1:24-cv-24894-KMW ("Plaintiff's contention that he cannot

access the arbitrator even to resolve gateway issues such as financial inaccessibility or waiver is similarly a challenge to the [d]elegation [c]lause in substance.").  The Court thus finds that it has jurisdiction to consider Plaintiff's effective vindication defense.  *See Jones*, 866 F.3d at 1264 (citation omitted).

In contrast, Plaintiff's remaining arguments—that the arbitration "has been had" within the meaning of 9 U.S.C. § 3 and that Defendant waived its right to arbitrate[2]—challenge the enforceability of the arbitration provision at large.  *See* Arb. Resp. at 14–19; *see also Taylor*, 2025 WL 2720238, at *7 ("Plaintiff's arguments that Carnival has waived its right to arbitrate and that arbitration has 'been had' within the meaning of 9 U.S.C. § 3 dispute the merits of her claims or procedural rules within arbitration.").  Accordingly, those challenges "come within the broad language of the Delegation Clause and are properly delegated to NAM to resolve," unless the Court finds that the Delegation Clause is unenforceable under the effective vindication doctrine.  *See Taylor*, 2025 WL 2720238, at *7 (citation omitted); *Lamonaco v. Experian Info. Sols., Inc.*, 141

---

[2]  Plaintiff further argues that the arbitration provision is null and void because the FAA exempts arbitration clauses in seamen's employment contracts.  *See* Arb. Resp. at 19–20.  The Court finds this argument unpersuasive as the Eleventh Circuit held in *Bautista v. Star Cruises* that the exemption does not apply to arbitration agreements governed by the Convention.  *See* 396 F.3d at 1295–99 ("The statutory framework of [the FAA] and the language and context of the Convention . . . preclude the application of the FAA seamen's exemption.").  Plaintiff's reliance on *GE Energy Power Conversion France SAS, Corp. v. Outokumpu Stainless USA, LLC* is likewise unavailing.  590 U.S. 432 (2020).  There, the Supreme Court explained that "the Convention requires courts to rely on domestic law to fill the gaps" in determining what constitutes a null and void defense under Article II.  *See id.* at 441.  However, the Eleventh Circuit has clarified that *Outokumpu* did not abrogate *Bautista* "because the Supreme Court did not consider whether Article II(3)'s null and void clause embraces . . . the FAA's seaman exception."  *See Chemaly v. Lampert*, 174 F.4th 843, 852 (11th Cir. 2026) (citation omitted).  Accordingly, the Court remains "bound by *Bautista* and its independent holding that the FAA's seaman exemption does not apply under the Convention."  *See id.* (citation omitted).

Plaintiff also argues that 28 U.S.C. § 1916 excuses seamen from paying filing fees.  *See* Arb. Resp. at 6–7.  However, that statute "only governs federal court procedures" and "does not bind private arbitration organizations."  *See Taylor*, 2025 WL 2720238, at *2 n.1 (citing 28 U.S.C. § 1916).

F.4th 1343, 1349 (11th Cir. 2025) ("[I]f a contract contains an arbitration clause with a delegation provision, then, 'absent a successful challenge to the delegation provision, courts must send all arbitrability disputes to arbitration.'" (citation omitted)).

### iii.   Effective Vindication Doctrine

Turning to Plaintiff's effective vindication challenge, Plaintiff argues that the effective vindication doctrine falls within Article II's "incapable of being performed" defense.  *See* Arb. Resp. at 10–14.  Defendant contends that "the Eleventh Circuit has not recognized effective vindication as a defense at this stage" and that, even if the doctrine applies, Plaintiff cannot "satisfy either prong in the analysis." *See* Arb. Reply at 3, 7–8.

The effective vindication doctrine "invalidates arbitration provisions that prospectively waive a party's right to pursue statutory remedies." *See Williams v. Shapiro*, 161 F.4th 1313, 1318 (11th Cir. 2025) (cleaned up and citation omitted).  The Supreme Court has recognized that the doctrine may "cover filing and administrative fees attached to arbitration that are so high as to make access to the forum impracticable." *See Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 236 (2013) (citation omitted); *see also Anders v. Hometown Mortg. Servs., Inc.*, 346 F.3d 1024, 1028 (11th Cir. 2003) ("It may be that an agreement to arbitrate is unenforceable if the cost of arbitration precludes the effective vindication of statutory rights in arbitration." (citation omitted)).

As to the applicability of the doctrine under the Convention, the Eleventh Circuit has explained that, assuming the doctrine constitutes a proper Article II defense, a party invoking the doctrine "because the cost of arbitration is prohibitively expensive must present evidence of two things:  (1) the amount of the fees he is likely to incur; and (2) his inability to pay those fees." *See Escobar v. Celebration Cruise Operator, Inc.*, 805 F.3d 1279, 1291 (11th Cir. 2015) (cleaned up and citation omitted); *see also Suazo*, 822 F.3d at 554 (citation omitted).  Although the Eleventh

Circuit declined to apply the doctrine in *Escobar* and *Suazo*, judges in this District have recognized effective vindication as an Article II defense under the Convention. *See Taylor*, 2025 WL 2720238, at *8 ("Although the [Eleventh Circuit] determined that the effective vindication doctrine did not apply in each of these cases, the denials were based on fact-specific issues, not on whether a cost-based effective vindication defense can be raised as an Article II defense." (citations omitted)); *see also* Omnibus Order at 15, *Wilson*, No. 1:24-cv-24894-KMW ("The Court sees no reason why a cost-based effective vindication challenge would be unavailable to a plaintiff under Convention Article II, as it fits neatly within the article's 'incapable for being performed' phrase of the null and void clause." (citation omitted)).

Here, even assuming the effective vindication doctrine is a proper Article II defense, the Court finds that Plaintiff has failed to satisfy her burden. The record reflects that Defendant has paid Plaintiff's share of the initial filing fee and that arbitration is now underway. *See* Arb. Reply at 8; Remand Resp. at 1, 6. Accordingly, Plaintiff is no longer prevented from accessing the arbitral forum due to her inability to afford the initial filing fee. *See Escobar*, 805 F.3d at 1292 (finding the effective vindication doctrine inapplicable when plaintiff had access to the arbitral forum).

The Court also finds unpersuasive Plaintiff's argument, raised in the Remand Reply, that Defendant's arbitral counterclaim seeking reimbursement of Plaintiff's share of the initial filing fee preserves her effective vindication defense. *See* (ECF No. 39-1) at 7–8; Remand Reply at 2–3. Whether Defendant's counterclaim will ultimately prevail is speculative and is not presently before the Court. Moreover, "the precise application of the cost-splitting clause is an issue properly for the arbitrator to consider, and [Plaintiff] has not shown that [she] 'is likely to incur' any costs due prior to the arbitrator's decision" now that Defendant has paid the full initial filing

10

fee. *See Escobar*, 805 F.3d at 1292 (citation omitted). The appropriate time for Plaintiff "to raise any argument relating to the payment of fees would be at the award-enforcement stage, if and when [Defendant] attempts to collect arbitral costs." *See id.* Therefore, the Court finds that the effective vindication doctrine is inapplicable and that the Delegation Clause is valid and enforceable. Accordingly, the Arbitration Motion is granted.

### B. Remand Motion

In the Remand Motion, Plaintiff concedes that "removal jurisdiction initially existed," but argues that as the Arbitration Response demonstrates that the arbitration provision is invalid, the Court no longer possesses subject matter jurisdiction over this action. *See* Remand Mot. at 1–2. As discussed above, the Court finds that the Delegation Clause is valid and enforceable. Therefore, the Court finds that it retains jurisdiction to compel arbitration in this matter. *See Attix*, 35 F.4th at 1304 ("[I]f the court finds that the challenge to the validity or enforceability of the delegation agreement lacks merit . . . the court must enforce the delegation agreement." (citation omitted)); *see also Chemaly*, 174 F.4th at 850–51 (11th Cir. 2026) ("When the Convention's 'four prerequisites are met and none of the Convention's affirmative defenses apply, then the district court must order arbitration.'" (citation omitted)). Accordingly, the Remand Motion is denied.

## IV.     CONCLUSION

Accordingly, UPON CONSIDERATION of the Motions, the pertinent portions of the record, and being otherwise fully advised in the premises, it is hereby ORDERED AND ADJUDGED that Defendant's Motion to Compel Arbitration and to Stay (ECF No. 5) is GRANTED and Plaintiff's Motion to Remand for Lack of Subject Matter Jurisdiction (ECF No. 31) is DENIED. Pursuant to 9 U.S.C. § 3, this Action is hereby STAYED pending the outcome

of the Parties' arbitration proceedings.  The Clerk of Court is INSTRUCTED to CLOSE this case.

All pending motions, if any, are DENIED AS MOOT.

DONE AND ORDERED in Chambers at Miami, Florida, this _3rd_ day of July, 2026.


_K. M. Moore_

K. MICHAEL MOORE
UNITED STATES DISTRICT JUDGE


c: All counsel of record